# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

GREGORY EVERETT,

      Plaintiff,

-vs-                                           Case No. 14-C-1189

BRP-POWERTRAIN, GmbH, & Co. KG
formerly known as BOMBARDIER-ROTAX,
GmbH, MOTORENFABRIK, a foreign corporation,
BOMBARDIER RECREATIONAL PRODUCTS,
a foreign corporation, KODIAK RESEARCH, Ltd.,
a foreign corporation, and LEADING EDGE
AIR FOILS, LLC,

      Defendants.

## DECISION AND ORDER

On October 5, 2011, Gregory Everett crashed his plane into a bean field in rural Missouri. Everett was 63 at the time and suffered serious, life-threatening injuries, including a fracture to his L2-L3 vertebrae and tear and damage to the lining of his spinal cord, which left him paralyzed below the waist. Everett blames the crash on a faulty engine, and he sues four companies for strict products liability and negligence: BRP-Powertrain ("Powertrain"), an Austrian corporation that designed and manufactured the engine at issue, a Rotax 582 Model 99 DCDI; Bombardier Recreational Products ("BRP"), a Canadian corporation and intermediate parent of

Powertrain; Kodiak Research, Ltd. ("Kodiak"), a Bahamian corporation and distributor of ROTAX engines; and Leading Edge Air Foils, LLC ("LEAF"), a Wisconsin company that sold the engine to Everett.[1] The first three defendants move to dismiss for lack of personal jurisdiction. For the reasons that follow, these motions are granted.

## I. General background

Everett bought the engine from LEAF at an airshow in Oshkosh, Wisconsin. The show, known as the "EAA Airventure Oshkosh," is sponsored by the International Experimental Aircraft Association. Everett was seen loading the engine into a motor home in the parking lot. From there, Everett presumably brought the engine to his home in Versailles, Missouri.

According to the complaint, Everett performed a "break-in" procedure and found that the Rotax engine was overheating. Everett contacted LEAF to discuss the problem. A mechanic and sales

---

[1] Everett alleges that LEAF is a Wisconsin corporation registered to do business in Wisconsin. LEAF is designated as an LLC, and for purposes of diversity jurisdiction, the citizenship of an LLC is determined by the citizenship of its members. *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007). In a declaration filed by Kodiak, William Read declares that he is the sole member of LEAF, and in the caption of the complaint, Read is listed as a "Registered Agent" with an address in Lyons, Wisconsin. This is not a proper allegation of citizenship with respect to Read. *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002) ("Citizenship for purposes of the diversity jurisdiction is domicile, and domicile is the place one intends to remain"). Therefore, in order to sustain the exercise of subject matter jurisdiction over LEAF, Everett must amend his complaint to allege that Read is a citizen of Wisconsin.

representative recommended that Everett change the engine jets from 165 jets to 170 jets, and if the engine continued to overheat, that Everett should synchronize the carburetors. On or about July 10, 2011, Everett installed 170 jets into the Rotax engine. A few days later, Everett installed the engine into his Kolb Mark II aircraft, tail number N9144E.

Everett conducted a series of test flights, during which the engine kept overheating. Everett consulted with LEAF extensively on how to solve the problem. Unfortunately, nothing worked and the engine overheated during what was the sixth test flight. Everett backed-off the throttle, as instructed by LEAF. The engine continued to overheat, so Everett feathered the throttle to reduce the temperature. The engine temperature reached 1,230 degrees Fahrenheit, seized, and stalled in mid-air.

## II.  Personal jurisdiction

When a defendant challenges the Court's personal jurisdiction, the plaintiff bears the burden of demonstrating that the Court may exercise such jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In the absence of an evidentiary hearing, the plaintiff need only make a "prima facie" showing that the Court may exercise personal jurisdiction. *Id.* If the defendant submits affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff

- 3 -

"must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 783. The plaintiff is entitled to have any conflicts in the affidavits or supporting materials resolved in his favor. *Id.*

In diversity cases, such as this one, a federal district court has personal jurisdiction "only if a court of the state in which it sits would have such jurisdiction." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997). Wisconsin's long-arm statute, Wis. Stat. § 801.05, confers jurisdiction "to the fullest extent allowed under the due process clause." *Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1217 (7th Cir. 1990). Thus, the Court will proceed directly to the due process analysis. *See Felland v. Clifton*, 682 F.3d 665, 678 (7th Cir. 2012) (explaining that the "constitutional and statutory questions tend to merge; compliance with the Wisconsin long-arm statute creates a presumption that constitutional due process is satisfied, although the defendant of course has the opportunity to dispute personal jurisdiction on purely constitutional grounds").

To satisfy due process, a nonresident defendant must have "certain minimum contacts with the [forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The central inquiry is whether a defendant's contacts with the forum state are such that it

should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). This ensures that a defendant will not be forced to litigate in a foreign forum solely as a result of random, fortuitous, or attenuated contacts. *Id.* at 475; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws").

### A. BRP/Powertrain

BRP is a Canadian company that manufactures recreational vehicles, such as snowmobiles and on-road vehicles. BRP owns Powertrain, an Austrian company that designs and manufactures aircraft engines for ultra-light aircraft, light aircraft, and unmanned aerial systems.

Powertrain does not design, manufacture, construct, assemble, produce, market, distribute, sell, service or repair aircraft engines, including the Rotax 582 engine at issue in this lawsuit, within the State of Wisconsin. Powertrain did not enter into any contract with a Wisconsin resident for the sale, installation or repair of any Rotax 582 engine. Powertrain does not do business in Wisconsin and does not maintain a place of business in Wisconsin. Powertrain does not own any real property

within Wisconsin and has no bank accounts within Wisconsin. Powertrain does not generate any Wisconsin-specific advertising materials. Powertrain has no employees or agents based in Wisconsin. Powertrain has no manufacturing plants in the United States. The manufacturing process occurs entirely in Austria.

Moreover, Powertrain does not sell or distribute its aircraft engine products directly to consumers or end-users. Instead, Powertrain aircraft engine products are sold to independent distributor entities outside of Wisconsin and the United States. *See* Affidavit of Peter Oslinger, Powertrain Vice President.

Everett argues that the Court can exercise both types of personal jurisdiction: general and specific. As to the former, in recent years the Supreme Court has "clarified and, it is fair to say, raised the bar for this type of jurisdiction." *Kipp v. Ski Enterprise Corp. of Wis., Inc.*, 783 F.3d 695, 698 (7th Cir. 2015). Courts can assert general jurisdiction over foreign (or out-of-state) corporations "to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, --- U.S. ----, 131 S. Ct. 2846, 2851 (2011); *Daimler AG v. Bauman*, --- U.S. ----, 134 S. Ct. 746, 761 (2014) ("the inquiry

- 6 -

under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State'") (quoting *Goodyear*, 131 S. Ct. at 2851). Neither BRP, a Canadian corporation, nor Powertrain, an Austrian corporation, can be considered "essentially at home" in Wisconsin. *Kipp*, 783 F.3d at 698 ("Thus far, the Court has identified only two places where [the 'essentially at home'] requirement will be met: the state of the corporation's principal place of business and the state of its incorporation");

Specific jurisdiction, as the name implies, is "case-specific; the claim must be linked to the activities or contacts with the forum." *Kipp* at 698. Here, Everett relies upon the stream-of-commerce theory, which "refers to the movement of goods from manufacturers through distributors to consumers …" *J. McIntyre Mach., Ltd. v. Nicastro*, --- U.S. ----, 131 S. Ct. 2780, 2788 (2011) (discussing *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102 (1987)). A forum state "does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce *with the expectation* that they will be purchased by consumers in the forum

- 7 -

state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980) (emphasis added). On the other hand, "foreseeability" is not the governing standard; if otherwise, "Every seller of chattels would in effect appoint the chattel its agent for service of process. His amenability to suit would travel with the chattel." *Id.* at 296.

Everett asserts that Powertrain knowingly maintained an open channel through which its products *could be* sold directly to Wisconsin retailers, and that it may still be aware that its products end up in Wisconsin, even in the absence of targeted marketing. As should be clear from the above-quoted authorities, this is not enough to satisfy due process. Everett's argument reflects the "pure stream of commerce" theory rejected by the Supreme Court in 2011: "the defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; *as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State.*" *J. McIntyre*, 131 S. Ct. at 2788 (emphasis added); *id.*, at 2793 (Breyer, J., concurring) (rejecting the view that "a producer is subject to jurisdiction for a products-liability action so long as it 'knows or reasonably should know that its products are distributed through a nationwide distribution system that *might* lead to those products being sold in any of the fifty states'")

(emphasis added).

In *J. McIntyre*, the courts of New Jersey asserted jurisdiction over a British manufacturer (J. McIntyre) in a products liability suit. Jurisdiction was premised upon the following: (1) an independent company agreed to sell J. McIntyre machines in the United States; (2) J. McIntyre officials attended annual conventions in the United States alongside the distributor, but never in New Jersey; and (3) no more than four machines, including the one that caused the injury, ended up in New Jersey. Under these facts, the Court found that J. McIntyre did not engage in conduct that was purposefully directed at New Jersey. "These facts may reveal an intent to serve the U.S. market, but they do not show that J. McIntyre purposefully availed itself of the New Jersey market." 131 S. Ct. at 2790. Powertrain is even further removed from the forum state than J. McIntyre because Powertrain does not associate with American distributors. Powertrain did not purposefully avail itself of the American marketplace, much less the Wisconsin marketplace.[2]

**B. Kodiak**

Kodiak is a Bahamian company that distributes Rotax brand

---

[2] Everett argues that the Court can assert jurisdiction over BRP under the "alter ego" theory, but this argument falls apart in the absence of jurisdiction over Powertrain.

uncertificated aircraft engines on a wholesale basis. Kodiak purchases the Rotax engines and parts that it sells from Powertrain. Kodiak has no business relationship with Powertrain other than purchasing newly manufactured engines and spare parts from Powertrain for wholesale distribution from Nassau, Bahamas.

The subject engine was bought from Kodiak by LEAF, a Wisconsin corporation located in Lyons, Wisconsin. LEAF has no business relationship with Kodiak other than purchasing wholesale engines and parts from Kodiak. Rotax brand engines and parts are among the many products sold by LEAF. LEAF's purchases of engines and parts from Kodiak in the Bahamas amount to no more than 3 to 4% of Kodiak's total sales. Kodiak has no distribution agreement with LEAF. Once LEAF purchased the engine from Kodiak, Kodiak had no control over what LEAF might do with the engine, where the engine would be sent or used, what it would be installed in, or whether and to whom LEAF would resell the engine. Kodiak provided LEAF with no instruction about the subsequent resale of any engines, and the engine sold by Kodiak was not a finished product but had to be combined with other components and placed within an airframe to make an aircraft. *See* Affidavit of Pascal Ronveaux, President of Kodiak.

No one from the State of Wisconsin has purchased engines from Kodiak in the last five years other than LEAF and W S Darley & Co ("Darley Pumps"), a manufacturer of fire pumps and water purifier systems located in Chippewa Falls. Darley Pumps has purchased Rotax uncertificated aircraft engines and accessories for use in the manufacture of portable fire pumps. Over the past three years, Darley Pumps' total purchases from Kodiak amounts to less than 0.5% of Kodiak's total sales. Darley Pumps has not bought any engines from Kodiak since March of 2012.

As noted above, Everett bought the subject engine at the EAA Airventure show in Oshkosh. Kodiak never directed LEAF to have a sales booth at any airshows. No one from Kodiak attended this airshow, or any other airshow in Wisconsin, for at least the last ten years. Kodiak did not supply or store any display engines or literature in Wisconsin for at least the last ten years. Everett never received any goods, documents of title, or other things of value from Kodiak in Wisconsin.

Kodiak does not transact any business in Wisconsin or have any agents, representatives, employees or offices in Wisconsin. Kodiak never employed any advertising or marketing directed to Wisconsin. Kodiak never made a contract in Wisconsin or performed under any contract in

Wisconsin. Kodiak never had a phone listing in Wisconsin, nor does it in any way seek to target Wisconsin in advertising or other media. Kodiak does not have any subsidiaries in Wisconsin. Kodiak does not own or maintain any bank accounts, credit lines, or real property in Wisconsin. Kodiak does not lease, own, use, or possess any real estate in Wisconsin.[3]

Given the foregoing, and in light of the preceding analysis with respect to BRP and Powertrain, it should come as no surprise that Kodiak is not subject to general jurisdiction in Wisconsin. To supplement that analysis, the Court notes that in *Daimler AG*, *supra*, the Supreme Court found that Daimler was not subject to jurisdiction in California despite the actions of a subsidiary dealer that had "multiple California-based facilities," and Daimler's sales in California accounted for 2.4% of sales worldwide. 134 S. Ct. at 752. Kodiak's Wisconsin sales (through LEAF) are similarly small, and Kodiak has no physical presence in Wisconsin. Therefore, Kodiak is not "essentially at home" in Wisconsin.

As for specific jurisdiction, Everett's argument fails with respect to Kodiak for many of the reasons already stated. Kodiak sold Rotax engines to Wisconsin companies (including LEAF), but Kodiak had no control over

---

[3] Kodiak does have a website located and maintained in Nassau, Bahamas, which displays engines that Kodiak sells and lists independent service centers. The website is not interactive for sales of engines.

where and to whom LEAF re-sold them. That the engine was re-sold in Wisconsin may have been foreseeable, but this does not demonstrate that Kodiak purposefully availed itself of the Wisconsin marketplace for purposes of *that* transaction. *Walden v. Fiore*, --- U.S. ----, 134 S. Ct. 1115, 1121 (2014) ("The inquiry whether a forum state may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation"). In fact, EAA Airventure-Oshkosh is directed towards an international audience, not the public of the State of Wisconsin. Ronveaux Aff., ¶ 17. Thus even if Kodiak directed LEAF to sell its products at the airshow (it didn't), such activity would not suggest that Kodiak "[sought] to serve" Wisconsin. *J. McIntyre*, 131 S. Ct. at 2788. Everett himself, after all, isn't even a Wisconsin resident, and he traveled from a distant state to attend the show and make a purchase.

Finally, Everett complains that the defendants should not be allowed to evade jurisdiction through a supposed "corporate shell game." This broadside allegation has emotional appeal, yet it is entirely beside the point. "The Due Process Clause, by ensuring the 'orderly administration of the laws,' gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some

minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen*, 444 U.S. at 297 (quoting *Int'l Shoe*, 326 U.S. at 319). BRP, Powertrain, and Kodiak all structured their affairs to avoid suit in the United States. They must be dismissed for want of jurisdiction.

### C. Jurisdictional discovery/leave to amend

As explained herein, the proponent of jurisdiction must make a "prima facie" showing, and if the defendant submits affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff "must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research*, 338 F.3d at 783. Everett is required to make this showing not only to defeat a motion to dismiss for lack of jurisdiction, but also to justify a request for jurisdictional discovery. *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1026 (7th Cir. 2009). Everett failed to satisfy this burden.

In a belated attempt to do so, Everett argues that he is entitled to jurisdictional discovery (or, in the alternative, should be allowed to file an amended complaint) because LEAF's website boasts that "LEAF continues

- 14 -

Case 2:14-cv-01189-LA   Filed 09/09/15   Page 14 of 18   Document 33

to be an Authorized Kodiak Service Center for ROTAX engines;"[4] because BRP's website discloses a manufacturing, research, and development facility located in Sturtevant, Wisconsin;[5] and because various other websites reveal a "complicated distribution scheme" between and among the defendants in this case.[6] None of this evidence is sufficient to create a prima facie case of specific or general personal jurisdiction in Wisconsin.

For example, the BRP website explains that BRP opened the Sturtevant facility in 2001 "to capture market leadership for its renowned Evinrude outboard engine brand. Ten years later, BRP invests 15 million to consolidate all Evinrude outboard engine related activities under one roof."[7] The existence of this facility is not enough to establish a prima facie case of specific jurisdiction because Everett's suit relates to a faulty airplane engine, not an outboard engine. Moreover, BRP is a multi-

---

[4] www.leadingedge-airfoils.com.

[5] www.brp.com.

[6] www.kodiakbs.com; www.flyrotax.com/home.aspx (sales and service network link); www.aeropaparadisellc.com (authorized independent ROTAX repair center in Reedsburg, Wisconsin);

[7] http://www.brp.com/en-us/company/brp-global-presence/facilitites/sturtevant-wisconsin-usa. In light of this information, the Court must note that it is troubled by the averment that BRP has no physical presence in Wisconsin. ECF No. 22, Affidavit of Yves St.-Arnaud, ¶¶ 9-13 (stating that BRP has no real property, employees, or manufacturing plants in Wisconsin ). However, it appears that Evinrude, like Powertrain, should be considered a separate corporate entity, which may explain the confusion. http://www.brp.com/en-us/company/history (explaining that BRP acquired Powertrain in 1970 and Evinrude in 2003).

- 15 -

national corporation with facilities and offices all over the world.[8] "[T]he general jurisdiction inquiry does not 'focu[s] solely on the magnitude of the defendant's in-state contacts.' General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler AG*, 134 S. Ct. at 762 n.20 (internal citations omitted). Accordingly, BRP is not "at home" in Wisconsin simply because it has some physical presence here. "Nothing in *Int'l Shoe* and its progeny suggests that 'a particular quantum of local activity' should give a State authority over a 'far larger quantum of … activity' having no connection to any in-state activity." *Id.*; *see also Chavez v. Dole Food Co.*, 947 F. Supp. 2d 438, 443 (D. Del. 2013) ("it cannot be inferred that Chiquita's ownership of a facility in Delaware, movement of its products through Delaware, and sale of products in Delaware make Chiquita 'at home' in Delaware. … The Supreme Court [in *Goodyear*] seemed to reject the idea that national or international corporations are subject to general jurisdiction throughout the United States").

---

[8] http://www.brp.com/en-us/company/brp-global-presence/facilities (facilities in Austria, Mexico, Finland, Canada, and the United States); http://www.brp.com/en-us/company/brp-global-presence/distribution-network (regional offices in North America, Latin America, Western Europe, Middle East, Africa, Scandinavia, Russia, Central Europe, Eastern Europe, and Asia Pacific).

Therefore, the motion for jurisdictional discovery is denied, as is the motion for leave to amend because it would be futile. *Cent. States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) ("Foreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists"); *Garcia v. City of Chi.*, 24 F.3d 966, 970 (7th Cir. 1994) (futile pleadings include "the inability to survive a motion to dismiss").

Finally, the Court notes that after drafting this opinion, it received a letter from counsel for BRP and Powertrain suggesting that Everett's motion for leave to conduct jurisdictional discovery should be denied and a deadline set for Everett to respond to the motion to dismiss. This course of action is unnecessary. Everett addressed the defendants' arguments in his "motions" for discovery. Indeed the premise behind Everett's motions is that he cannot make out a prima facie case of jurisdiction without access to discovery. This is backwards for the reasons already stated; Everett must make out a prima facie case of jurisdiction before he can unlock the door to jurisdictional discovery. It also illustrates the pointlessness of further briefing because Everett essentially admits that he cannot establish a basis for jurisdiction without discovery in the first instance.

NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:

1. Everett's motions for leave to file sur-reply briefs [ECF Nos. 29, 30] are **GRANTED**;

2. Everett's motions for leave to conduct jurisdictional discovery [ECF Nos. 15, 26] are **DENIED**;

3. Kodiak's motion to dismiss for lack of jurisdiction [ECF No. 9] is **GRANTED**;

4. The motion to dismiss filed by Powertrain and BRP [ECF No. 20] is **GRANTED**; and

5. Within **thirty (30) days** of the date of this Order, Everett must amend his complaint to correct the jurisdictional deficiencies with respect to LEAF, the remaining defendant in this case.

Dated at Milwaukee, Wisconsin, this 9th day of September, 2015.

BY THE COURT:

*/s/ Rudolph T. Randa*
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**