# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

GREGORY EVERETT,
   **Plaintiff,**

  v.              Case No. 14-C-1189

LEADING EDGE AIR FOILS, LLC,
   **Defendant.**

## DECISION AND ORDER

The plaintiff, Gregory Everett, suffered serious injuries when a small plane he was piloting crashed. He claims that the crash was caused by a defective Rotax engine that he purchased at a popular airshow in Oshkosh, Wisconsin. Everett filed this suit, alleging negligence and strict products liability, in the Eastern District of Wisconsin against four companies that he alleges were involved in the design, manufacture, distribution, and sale of the engine.

This case was initially assigned to Judge Rudolph T. Randa. While the case was pending before Judge Randa, three of the four defendants filed motions to dismiss on the ground that they are not subject to personal jurisdiction in Wisconsin. These three defendants are Bombardier Recreational Products, Inc.; BRP-Rotax GmbH & Co KG (formerly known as BRP-Powertrain GmbH & Co KG); and Kodiak Research, Ltd. I will refer to these defendants, respectively, as "BRP Inc.," "BRP-Rotax," and "Kodiak." The plaintiff opposed the motions to dismiss and also requested leave to conduct discovery relating to personal jurisdiction. Judge Randa denied the plaintiff's request for jurisdictional discovery and granted the defendants' motions to dismiss. *See* Dec. & Order of Sept. 9, 2015, ECF No. 33. A short time later, the plaintiff filed a motion for

reconsideration of these decisions, which Judge Randa denied. *See* Dec. & Order of January 20, 2016, ECF No. 45. The case then proceeded against the fourth defendant, Leading Edge Air Foils, Inc., or "LEAF," on the merits. At about this time, Judge Randa became unable to preside over cases, and the case was reassigned to me.

LEAF is a small Wisconsin company that sold the Rotax engine to the plaintiff at the airshow in Oshkosh, Wisconsin. After taking some discovery from LEAF, including the deposition of LEAF's owner, William Read, the plaintiff settled its claims against this defendant. During the deposition, the plaintiff's lawyer extensively questioned Read about the previously dismissed defendants' contacts with Wisconsin. Believing that Read's testimony gives rise to a stronger basis for exercising personal jurisdiction over these other defendants, the plaintiff filed a second motion to reconsider Judge Randa's order dismissing those defendants and denying his request for jurisdictional discovery. After the plaintiff filed this motion, he and LEAF entered into a stipulation agreeing to the entry of an order dismissing LEAF from this case with prejudice. I entered such an order on May 4, 2017. Below, I address the plaintiff's motion for reconsideration of Judge Randa's order dismissing the other three defendants and denying him leave to conduct jurisdictional discovery.

## I. FACTUAL BACKGROUND

During the life of this case, the parties have filed several motions relating to personal jurisdiction over BRP Inc., BRP-Rotax, and Kodiak, and the factual materials relevant to the plaintiff's motion for reconsideration are scattered throughout the record. For convenience, I have identified the relevant materials, and where they may be found

in the record, in the margin.[1]  Because neither Judge Randa nor I held a hearing on the question of personal jurisdiction, I resolve any conflicts in the parties' affidavits or other supporting materials in the plaintiff's favor.  *See, e.g., Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782–83 (7th Cir. 2003).

The product at issue in this case is a Rotax 582 Model 99 DCDI engine.  The plaintiff, who is a resident of Missouri, purchased this engine from LEAF at an airshow in Oshkosh, Wisconsin.  This airshow is known as the EAA AirVenture Oshkosh, which is sponsored by the International Experimental Aircraft Association.  This is one of the largest airshows in the world, and each year more than half a million people and hundreds of manufacturers of airplane products attend.  Read Dep. at 10:8–10:12, 13:4–13:7;  *see also*  https://www.eaa.org/en/airventure/about-eaa-airventure-oshkosh/overview (last viewed July 7, 2017).  After the plaintiff purchased the engine, he presumably transported it to his home in Missouri, where it was installed in his personal aircraft.  He alleges in his complaint that, during a flight in Missouri, the engine overheated and stalled, which caused the plane to crash.  The plaintiff suffered a fractured spine and other injuries that left him paralyzed below the waist.

The engine at issue was designed and manufactured by BRP-Rotax.  This company is organized under the laws of Austria and has its principal place of business in Gunskirchen, Austria.  Oslinger Aff. ¶ 3.  The engine itself was designed and

---

[1] Aff. of Pascal Ronveaux, ECF No. 10-2; Decl. of William Read, ECF No. 110-3; Aff. of Eric Tucker, ECF No. 10-4; Aff. of Yves St-Arnaud, ECF No. 22; Aff. of Peter Oslinger, ECF No. 23; Screenshots from BRP-Rotax, Kodiak & LEAF websites, ECF Nos. 37-1, 37-2 & 37-3; Aff. of Colin A. Sommer, P.E., ECF No. 37-4; Dep. of Pascal Ronveaux, ECF No. 37-5; Dep. of William Read, ECF Nos. 80-1.

manufactured at BRP-Rotax's facilities in Austria. *Id.* ¶ 4. BRP-Rotax does not directly transact business in the United States, but it sells products in the United States through its independent distributor, Kodiak Research, Ltd. *Id.* ¶ 11; Ronveaux Aff. ¶ 5. Kodiak is organized under the laws of the Bahamas and has its only place of business in Nassau, Bahamas. Ronveaux Aff. ¶ 3. Kodiak distributes Rotax products to retailers in the United States. *Id.* ¶¶ 4, 10–16. Kodiak sold the engine at issue in this case to LEAF, a Wisconsin limited liability company, through a transaction in which title to the engine passed to LEAF while the engine was still in the Bahamas, and in which LEAF was responsible for getting the engine from the Bahamas to Wisconsin. Read Dep. at 67:21–68:4. In business terms, LEAF's purchase of the engine from Kodiak was "F.O.B. Bahamas." *Id.*; Ronveaux Aff. ¶ 10.

The evidence in the record establishes that both BRP-Rotax and Kodiak are aware that LEAF purchases Rotax products from Kodiak with the intent to resell those products to customers from its location in Wisconsin. According to William Read, Kodiak has designated LEAF as an "independent service center" for Rotax engines. Read Dep. at 8:16–9:2. This means that Kodiak has granted LEAF permission to sell Rotax branded parts and use Rotax logos in its marketing materials. *Id.* at 9:3–9:7. Also, as a designated independent service center, LEAF attends an annual meeting at Kodiak's facility in the Bahamas. *Id.* at 31:14–31:25. Pascal Ronveaux, Kodiak's president, knows that LEAF is one of its independent service centers and that LEAF is located in Wisconsin. Ronveaux Dep. at 34:1–34:24; Read Dep. at 25:11–25:15. Further, Kodiak has a website that includes a map that identifies the locations of its independent service centers. *See* ECF No. 37-2. The map identifies LEAF as an

independent service center located in Wisconsin. *Id.* As for BRP-Rotax, its own website has a "dealer locator" feature that identifies LEAF as a place to purchase Rotax products in Wisconsin. ECF No. 37-1.

The remaining defendant, BRP Inc., is the parent company of BRP-Rotax. *See* St-Arnaud Aff. ¶ 6. BRP Inc. is organized under the laws of Canada and has its principal place of business in Valcourt, Quebec. *Id.* ¶ 3. According to one of BRP Inc.'s officers, BRP Inc. was not involved in the design, manufacture, or sale of the Rotax engine at issue in this case. *Id.* ¶ 5. Rather, the chain of events that led to the plaintiff's purchasing the engine in Wisconsin began with BRP-Rotax as the designer and manufacturer, passed through Kodiak as the distributor, and ended with LEAF as the retailer. In his complaint, the plaintiff alleges that BRP Inc. was involved in the design and manufacture of the engine. Am. Compl. ¶ 13, ECF No. 46. However, the plaintiff has not submitted evidence to contradict BRP Inc.'s affidavit stating that it was not involved in the design or manufacture of the engine. *See Purdue Research*, 338 F.3d at 782 ("once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction"). Nor has the plaintiff offered any colorable grounds for believing that BRP Inc. was in fact involved in the design and manufacture of the engine, such that further discovery on this topic would be warranted. *See Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) (stating that jurisdictional discovery against a defendant is warranted only if plaintiff establishes a "colorable or prima facie showing of personal jurisdiction"). Thus, for purposes of determining whether BRP Inc. is subject to personal

jurisdiction in Wisconsin, I assume that it was not involved in the design or manufacture of the engine.

## II. DISCUSSION

As noted, the issue of personal jurisdiction arises in the context of the plaintiff's second motion to reconsider Judge Randa's original order granting BRP Inc.'s, BRP-Rotax's, and Kodiak's motions to dismiss. The plaintiff, in his motion for reconsideration, characterizes the motion as one filed under Federal Rule of Civil Procedure 60(b), and the defendants contend that, under the legal standards applicable to Rule 60(b) motions, the plaintiff's motion is untimely. However, Rule 60(b) applies only when a party seeks relief from a *final* judgment, order, or proceeding. Judge Randa's order dismissing the three defendants for lack of personal jurisdiction was not final because (a) it did not dispose of the plaintiff's claims against LEAF and (b) Judge Randa did not direct the entry of final judgment as to the dismissed parties only. *See* Fed. R. Civ. P. 54(b). Under Rule 54(b), Judge Randa's order may be "revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Id.*; *see also Cameo Convalescent Center, Inc. v. Percy*, 800 F.2d 108, 110 (7th Cir. 1986) (pre-judgment orders may be reconsidered at any time). This court has not yet entered a judgment adjudicating all of the claims and all of the parties' rights and liabilities, and thus Judge Randa's earlier order dismissing some of the defendants for lack of personal jurisdiction remains nonfinal.[2] Accordingly, the legal standards

---

[2] After the plaintiff filed his latest motion for reconsideration of Judge Randa's order, he and LEAF entered into a stipulation of dismissal, and I entered an order of dismissal as to LEAF only. However, after the dismissal of LEAF, neither I nor the clerk entered a judgment reflecting the termination of the litigation as to all claims and all parties. Thus,

applicable to a motion under Rule 60(b) do not apply to the plaintiff's motion for reconsideration. I will therefore treat the plaintiff's motion as a motion to reconsider a nonfinal order. Moreover, because the deposition of William Read introduces new facts into the personal-jurisdiction analysis, I conclude that it is appropriate to revisit whether this court has personal jurisdiction over the three dismissed defendants. I address this question below.

In cases in which a federal court's subject-matter jurisdiction is based on diversity of citizenship, the court will have personal jurisdiction over a defendant only if the state in which the court sits would have such jurisdiction. *Kipp v. Ski Enter. Co. of Wis.*, 783 F.3d 365, 697 (7th Cir. 2015). Judge Randa concluded that Wisconsin's long-arm statute, Wis. Stat. § 801.05, confers jurisdiction to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment, ECF No. 33 at p.4, and no party asks me to address the long-arm statute. Thus, I will not discuss the long-arm statute but will proceed to the question of whether exercising personal jurisdiction over BRP Inc., BRP-Rotax, and Kodiak is consistent with due process.

The Due Process Clause authorizes personal jurisdiction over an out-of-state defendant when the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and

---

the order dismissing LEAF as a party did not transform Judge Randa's earlier order into a final order. Moreover, although a stipulation of dismissal of an action may terminate the litigation as to all claims and all parties without a court order, *see* Fed. R. Civ. P. 41(a)(1)(A)(ii), here the stipulation of dismissal, which was signed by only the plaintiff and LEAF, was not a Rule 41(a) stipulation of dismissal, as it did not purport to dismiss the entire action and was not "signed by all parties who have appeared," as required by the rule. *See* Rule 41(a)(1)(A)(ii). So again, the dismissal of LEAF did not transform Judge Randa's nonfinal order into a final order.

substantial justice.'" *Kipp*, 783 F.3d at 697 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Another prerequisite to a court's exercising personal jurisdiction over a defendant is that the defendant must have "purposefully availed" itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (quoting *Hanson v. Denckla*, 564 U.S. 873 (1958)). Courts recognize two types of personal jurisdiction: general and specific. *Kipp*, 783 F.3d at 697 (quoting *Daimler AG v. Bauman*, __ U.S. __, 134 S.Ct. 746, 751 (2014)). General jurisdiction is "all-purpose"; it exists only "when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Id.* at 697–98 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific jurisdiction is case-specific; the claim must be linked to the activities or contacts with the forum. *Id.* at 698; *see also Bristol-Myers Squibb Co. v. Superior Court of California*, __ U.S. __, 137 S.Ct. 1773, 1780 (2017).

In products-liability cases such as this one, it has long been the law that a manufacturer or distributor of an allegedly defective product is subject to specific personal jurisdiction in the state in which the product was sold to the plaintiff, so long as the sale of the product in that state was not an "isolated occurrence" but arose from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in that state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Put differently, a state "does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers

in the forum State." *Id.* at 298. This is hornbook law. *See, e.g.,* Am. L. of Prods. Liab

3d § 48:85 (Westlaw 2017); *see also Dehmlow v. Austin Fireworks*, 963 F.2d 941, 946

(7th Cir. 1992) ("This Circuit has repeatedly endorsed the 'stream of commerce theory'

and has resolved cases on the basis of it."). More recently, a plurality of the Court has

stated that, under the stream-of-commerce theory, the defendant's transmission of

goods to a state permits the exercise of jurisdiction where the defendant "can be said to

have targeted the forum" by "engag[ing] in conduct purposefully directed at" the forum

state. *J. McIntyre*, 564 U.S. at 882, 886 (opinion of Kennedy, J.).[3]

In the present case, the evidence in the record establishes that both BRP-Rotax,

the manufacturer of the allegedly defective engine, and Kodiak, the distributor of that

engine to LEAF in Wisconsin, are subject to specific personal jurisdiction in Wisconsin

in connection with a claim for personal injuries caused by that engine. The record

establishes that the sale of the Rotax engine in Wisconsin was not an isolated

occurrence but was part of the regular flow of Rotax products from BRP-Rotax, through

Kodiak, to LEAF in Wisconsin; that both BRP-Rotax and Kodiak expected that that

consumers would purchase Rotax products from LEAF in Wisconsin; and that these

defendants targeted Wisconsin.

---

[3] I acknowledge that the "stream of commerce" theory still has its unsettled aspects, particularly as it applies to cases in which a product is brought into the forum through the isolated actions of third parties of which the manufacturer or distributor is unaware. *See, e.g., J. McIntyre*, 564 U.S. at 879 (noting that Court's separate opinions in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987), created confusion over scope of stream-of-commerce theory). But in the present case, as discussed below, both Kodiak and BRP-Rotax knew that LEAF regularly sold Rotax products in Wisconsin and advertised on their websites that LEAF was an outlet for Rotax products in Wisconsin. Thus, this case falls within the well-settled core of the stream-of-commerce theory.

First, the record shows that LEAF was essentially a dealer of Rotax products and that it has made many sales of Rotax products in Wisconsin. William Read, LEAF's owner, testified that LEAF has been selling Rotax products from its location in Wisconsin since the year 2000. Read Dep. at 8:4–8:8. Kodiak designated LEAF as an "independent service center," meaning that it granted LEAF permission to "sell Rotax branded parts" and to "use the Rotax logo in [its] marketing." *Id.* at 8:16–9:7. Read testified that the only way for new Rotax products to be sold within the United States is through an independent service center, and that, besides LEAF, there were only two other such service centers in the United States, one in California and one in Florida. *Id.* at 11:19–11:21, 14:3–14:7, 65:18–67:10. These facts show that the sale of a Rotax engine to the plaintiff in Wisconsin was no isolated occurrence but was part of BRP-Rotax's and Kodiak's regular course of business, which was to introduce products into the stream of commerce with the expectation that they would be sold by LEAF in Wisconsin.[4]

Moreover, the record shows that LEAF's sales of Rotax products in Wisconsin arose from the efforts of Kodiak and BRP-Rotax to "serve directly or indirectly" the market for Rotax products in Wisconsin. *See World-Wide Volkswagen*, 444 U.S. at 297. As discussed, Kodiak authorized LEAF to serve as a dealer of Rotax products in Wisconsin. This included the right to use the Rotax logo in marketing materials in

---

[4] Although title to the Rotax parts sold by LEAF appears to pass to LEAF in the Bahamas rather than in Wisconsin, this fact does not defeat personal jurisdiction. *See* Am. L. of Prods. Liab. 3d § 48:85 ("Jurisdiction does not depend on the technicalities of when title passes, because a manufacturer can be subjected to in personam jurisdiction as a result of a distribution system employing independent wholesalers as well as one employing its own corporate apparatus.").

Wisconsin. Kodiak invites LEAF to attend its annual meeting in the Bahamas for the purpose of educating LEAF on various aspects of the business of selling and servicing Rotax parts. Read Dep. at 31:14–34:9. Finally, both Kodiak and BRP-Rotax, on their websites, identify LEAF at its location in Wisconsin as a place to purchase and obtain service for Rotax parts. *See* ECF Nos. 37-1 & 37-2; *see also* http://dealerlocator.flyrotax.com// (BRP-Rotax website, last viewed July 7, 2017); https://kodiakbs.com/service-and-repair-center (Kodiak website, last viewed July 7, 2017). These defendants thus invite potential Rotax customers to purchase Rotax parts from LEAF in Wisconsin and therefore "can be said to have targeted [Wisconsin]" by "engag[ing] in conduct purposefully directed at [Wisconsin]." *J. McIntyre*, 564 U.S. at 882, 886. Accordingly, both of these defendants are subject to personal jurisdiction in Wisconsin in connection with the plaintiff's claim alleging personal injuries caused by a Rotax engine purchased in Wisconsin.

As for BRP Inc., however, the plaintiff has not shown that there is a colorable basis for exercising personal jurisdiction over it. The affidavit of BRP Inc.'s officer states that BRP Inc. was not involved in the design, manufacture, distribution, or sale of any aircraft engine, much less the Rotax engine that is the subject of this case. The plaintiff has not offered any reason for thinking that this is false or that further discovery would show that it is false. Because BRP Inc. did not manufacture or distribute the engine

involved in this case, it is not subject to specific personal jurisdiction in Wisconsin based on the stream-of-commerce theory discussed above.[5]

The plaintiff argues that because BRP Inc. is BRP-Rotax's parent company, it is subject to personal jurisdiction in any state in which BRP-Rotax is subject to personal jurisdiction. However, the "general rule" is that "the jurisdictional contacts of a subsidiary corporation are not imputed to the parent." *Abelesz v. OTP Bank*, 692 F.3d 638, 658 (7th Cir. 2012); *see also Central States*, 230 F.3d at 943. The activities of a subsidiary may suffice to assert jurisdiction over the parent if there is some basis for piercing the corporate veil, such as the parent's unusual degree of control over the subsidiary, but this does not apply in the case of an ordinary parent-subsidiary relationship that observes corporate formalities. *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 733 (7th Cir. 2013). The plaintiff suggests that BRP-Rotax's corporate veil should be pierced because it and BRP Inc. are alter egos. *See* Mot. for Reconsideration at 7, ECF No. 80. However, the plaintiff has not offered any colorable basis for believing that BRP Inc. and BRP-Rotax are alter egos. He merely asserts that because BRP Inc. is BRP-Rotax's parent, these two entities are alter egos. *See id.* ("[BRP-Rotax] manufactures the Rotax 582 engine and is a wholly-owned subsidiary corporation owned by [BRP Inc.] These two facts alone establish the basis for the alter ego theory."). But to pierce the corporate veil, the plaintiff must do more than show a parent-subsidiary relationship. The plaintiff must show that the parent and the subsidiary do not observe corporate formalities or other facts showing that the

---

[5] Judge Randa in his earlier orders concluded that BRP Inc. is not subject to general jurisdiction in Wisconsin, and this conclusion is clearly correct. I therefore will not further discuss the possibility of exercising general jurisdiction over BRP Inc.

subsidiary is a mere shell that does not conduct any business separate from the parent. *See, e.g., Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751–52 (7th Cir. 2012). Here, the plaintiff has offered no reason for thinking that BRP Inc. and BRP-Rotax are not bona fide separate corporations or that he would find evidence to support a veil-piercing theory if given leave to conduct jurisdictional discovery. Therefore, I will not grant the plaintiff leave to conduct such discovery. Instead, I conclude that BRP Inc. is not subject to personal jurisdiction in Wisconsin in connection with this case.

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the plaintiff's motion for reconsideration (ECF No. 80) is **GRANTED IN PART**. The motion is granted to the extent that the dismissal BRP-Rotax and Kodiak from this case for lack of personal jurisdiction is vacated, and those defendants are reinstated as parties and must respond to the amended complaint. The motion is denied as to defendant BRP Inc., and as to the plaintiff's request for leave to conduct jurisdictional discovery.

**IT IS FURTHER ORDERED** that the parties' motions to seal certain portions of the record (ECF Nos. 79 & 89) are **GRANTED**. Although the parties have not shown good cause for removing the sealed materials from the public record, I did not consider those materials when deciding the motion to dismiss. Thus, the public does not need access to those documents to understand and evaluate this opinion. See *City of Greenville, Ill. v. Syngenta Crop Protection, LLC*, 764 F.3d 695, 697 (7th Cir. 2014) (the presumption of public access to materials in the record is limited to materials that affect judicial decisions).

Dated at Milwaukee, Wisconsin, this 7th day of July, 2017.

/s Lynn Adelman
LYNN ADELMAN
United States District Judge